Robert F. Keehn, Esq. (115848)
rkeehn@rfk-law.com
Law Office of Robert F. Keehn
400 Corporate Pointe, Suite 300
Culver City, CA 90230
(310) 551-6525 telephone
(310) 284-2654 facsimile

Attorney for Plaintiff
Errol Bennett

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERROL BENNETT,<br><br>       Plaintiff,<br><br>    vs.<br><br>KAISER PERMANENTE SOUTHERN CALIFORNIA EMPLOYEES PENSION PLAN SUPPLEMENT TO THE KAISER PERMANENTE RETIREMENT PLAN FOR SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP and SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,<br><br>       Defendants. | Case No. 3:24-cv-00215<br><br>COMPLAINT FOR (1) DECLARATORY RELIEF AND (2) APPROPRIATE EQUITABLE RELIEF UNDER EMPLOYEE RETIREMENT INCOME SECURITY ACT<br><br>[29 U.S.C. § 1132(a)(1)(B); 29 U.S.C. § 1132(a)(3)] |

     Plaintiff ERROL BENNETT hereby complains against defendants KAISER PERMANENTE SOUTHERN CALIFORNIA EMPLOYEES PENSION PLAN SUPPLEMENT TO THE KAISER PERMANENTE RETIREMENT PLAN FOR SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP and SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP as follows:

PRELIMINARY ALLEGATIONS

1.      Plaintiff ERROL BENNETT (hereinafter "Bennett" or "plaintiff") is an individual. Plaintiff is a resident of the County of Los Angeles in the State of California.

2.      Defendant KAISER PERMANENTE SOUTHERN CALIFORNIA EMPLOYEES PENSION PLAN SUPPLEMENT TO THE KAISER PERMANENTE RETIREMENT PLAN FOR SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP (hereinafter "the Kaiser Plan") was at all relevant times, and now is, an "employee benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3).

3.      Defendant SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP (hereinafter "SCPMG") was at all relevant times, and now is, a business entity, form unknown, doing business throughout Southern California.

4.      Bennett is the son of Sharon Walker ("Sharon"). At the time of her death in December 2015, Sharon had been an employee of SCPMG for more than 30 years and was a "participant" in the Kaiser Plan within the meaning of ERISA, 29 U.S.C. § 1002(7).

5.      At all relevant times, Bennett was a "beneficiary" of the Kaiser Plan within the meaning of ERISA, 29 U.S.C. § 1002(8).

6.      Sharon was a valued, dedicated SCPMG employee. Sharon was placed on leave in July 2015 due to plasma cell leukemia that was affecting her job performance. (This included passing out at her desk.) She was a diligent employee and did not want to go on leave; to the contrary, she wanted to keep working. An email in Sharon's department file explained that "historically she has been a great employee" but that she was "having a hard time seeing her own decline."[1] The same email emphasized that "[t]his is really not a performance issue, it is a health issue."[2]

---

[1] Sharon had previous leaves of absence due to her cancer yet returned to work with SCPMG. For example, she was on leave for almost 20 months in connection with a stem cell transplant beginning in November 2011 but resumed work in July 2013.

[2] In what may have been her final performance evaluation, completed in June 2015, Sharon was given the highest possible evaluation. An evaluation addendum completed at the same time gave her the highest possible rating for "Compliance and Integrity" and "Service Language."

7.     Sharon's final leave began on or about July 22, 2015. On December 2, 2015 the leave was approved for extension through October 22, 2016. Sharon died on Monday, December 7, 2015.

## JURISDICTION

8.     This action involves a dispute concerning benefits provided under an employee benefit plan subject to ERISA, 29 U.S.C. § 1001 et seq. Accordingly, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and pursuant to ERISA, 29 U.S.C. § 1132(e)(1). Venue in this judicial district is proper under ERISA, 29 U.S.C. § 1132(e)(2), in that the Kaiser Plan is administered here, and because the Kaiser Plan contains a forum selection provision requiring an action such as this one to be brought in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

9.     The Kaiser Plan is administered in, and may be found in the County of Alameda, California. Accordingly, pursuant to Civil Local Rule 3-2(d), the matter should be assigned to the San Francisco Division or the Oakland Division of this Court.

## FIRST CLAIM FOR RELIEF

(Against SCPMG for Appropriate Equitable Relief under 29 U.S.C. § 1132(a)(3))

10.     Plaintiff incorporates herein by this reference as though fully set forth the allegations of Paragraphs 1 through 9, above.

11.     Beginning in or about September 2015, Sharon's brother, Victor Walker ("Victor"), began to assist Sharon in obtaining her retirement benefits from the Kaiser Plan. (At the time, the lump sum valuation of Sharon's retirement account was in excess of $252,000.00.) On December 3, 2015, using a power of attorney that may not even have authorized him to do so, Victor spoke with one or more representatives of the Kaiser Plan and arranged for Sharon's employment with SCPMG to be terminated effective December 4, 2015. Ostensibly, such a termination date was required before the payment of Sharon's retirement benefits could begin;

the termination date served no other purpose and otherwise would not have been requested by Victor.

12.     Representatives of the Kaiser Plan sent paperwork to Victor to be completed so that Sharon's retirement benefits could be paid. However, either because the paperwork was not timely sent to Victor or because Victor did not properly complete the paperwork, Sharon died before the paperwork could be completed and returned to the Kaiser Plan. Under the terms of the Kaiser Plan, Sharon's death cut off Victor's ability to obtain Sharon's retirement benefits. Nonetheless, the December 4, 2015 employment termination date apparently remained in SCPMG's records.

13.     The Kaiser Plan also provided for a *different* type of benefit, known as a "Qualified Dependent death benefit." Plaintiff in fact met the Kaiser Plan's definition of "Qualified Dependent," and therefore submitted a claim for benefits after the failure of Victor's efforts to extract Sharon's retirement benefits. Plaintiff is informed and believes that if payable, the Qualified Dependent death benefit would result in the payment of some $1337.25 per month for the ten-year period starting January 1, 2016, for a total payout of $160,470.00.

14.     Plaintiff's claim for the Qualified Dependent death benefit was denied on April 22, 2020. Plaintiff submitted the mandatory administrative appeal, which was rejected under cover of June 15, 2022 (thereby satisfying any requirement for the exhaustion of administrative remedies). The sole basis for the denial(s) was that Sharon's SCPMG employment had been terminated on December 4, 2015, three days prior to her death. In other words, if Sharon had remained employed with SCPMG at the time of her death on December 7, 2015, the Qualified Dependent death benefit would have been paid to plaintiff.

15.     The Kaiser Plan's June 15, 2022 denial of plaintiff's administrative appeal, addressed to counsel for plaintiff, included an important caveat:

> Because at the claim level, [plaintiff] did not dispute Sharon's employment status
> upon her death, the Benefits Compliance department did not have the opportunity
> in the claim denial letter to direct [plaintiff] to the appropriate department to
> resolve that issue. If you or [plaintiff] want to dispute the employment termination

Complaint

date with SCPMG, you must do so in writing within 60 days of the date of this letter.

16.     The June 15, 2022 letter provided the name, address and title of a Frank Hurtarte, to whom any request to SCPMG for a change in Sharon's employment termination date was to be directed. Written communications from or on behalf of the Kaiser Plan at or about the same time made it clear that if Hurtarte, acting on behalf of SCPMG, would be willing to change Sharon's termination date so that she remained employed as of December 7, 2015, plaintiff's Qualified Dependent death benefit *would be paid*. Thus, SCPMG, acting through Hurtarte, would serve as a "functional" fiduciary under ERISA for the purpose of deciding any request by plaintiff for a change in Sharon's employment date. As an ERISA fiduciary entertaining the request for such a change in the termination date, SCPMG's principal obligation would be to discharge its duties *solely* in the interest of the Kaiser Plan's participants and beneficiaries – in this case, plaintiff – and for the *exclusive* purpose of providing benefits to any such participants and beneficiaries. See 29 U.S.C. § 1104(a)(1)(A).[3] As the applicable case authority recognizes, such fiduciary duties under ERISA "are the highest known to the law."

17.     Counsel for plaintiff did in fact request from SCPMG a rescission or other change in Sharon's termination date, writing to Hurtarte for that purpose on September 8, 2022. (The original 60-day deadline had been extended so that the request was timely.) A copy of plaintiff's request (excluding exhibits) is attached hereto as Exhibit 1. Prior to making the request, counsel for plaintiff left multiple messages for Hurtarte in an effort to determine whether there was any information or documentation in particular that Hurtarte needed or wanted in connection with plaintiff's request for a change in Sharon's termination date. Hurtarte never responded. Similarly, the written request itself closed with the following invitation:

> In this letter I have tried to include enough information and documentation to
> provide a thorough understanding of the background of my client's claim. But, of
> course, I have been living with this claim for a number of years now, and I know

---

[3] The duty of loyalty codified in section 1104(a)(1)(A) has a second prong which is not particularly germane here: "[D]efraying reasonable expenses of administering the plan."

the facts and documentation relatively well. It is certainly possible that after you

have reviewed this submission, you will have questions for me, or that you will

require additional information or documentation. If that is the case, rest assured

that I will be happy to cooperate in any way I can.

Here again, however, Hurtarte never contacted counsel for plaintiff with any questions.

18.     Four months passed. During that period, counsel for plaintiff followed up with

Hurtarte or counsel for SCPMG on several occasions, each time reminding Hurtarte or counsel

that he was available and willing to answer any question arising from the September 8, 2022

letter sent to Hurtarte. Finally, Hurtarte issued a brief letter dated January 12, 2023, which

declined to rescind or otherwise change Sharon's employment termination date. A copy of the

letter is attached hereto as Exhibit 2. The January 12, 2023 letter was utterly tone-deaf, and failed

on even the most basic level to meaningfully respond to plaintiff's request for a change in

Sharon's employment termination date. The letter merely recited the chronology already known

to the interested parties, mistakenly characterized Victor's request for the December 4, 2015

termination date as "unintentional" – it had been intentional, albeit mistakenly based on the

erroneous belief that Sharon's retirement benefits would then be paid – and disingenuously and

ludicrously concluded that "[w]e do not have any facts in this matter indicating this was

unintentional or to support  a recission of Ms. Walker's termination."

19.     SCPMG's refusal to change Sharon's termination date was a breach of the

fiduciary duty of loyalty as codified in ERISA, 29 U.S.C. § 1104(a)(1)(A). SCPMG's breach

caused harm to plaintiff, in that as a result of said breach, plaintiff was unable to obtain the

Qualified Dependent death benefit.

20.     As a result of the foregoing, plaintiff is entitled to appropriate equitable relief, in

the form of declaratory relief and/or rescission changing the date of Sharon's employment

termination so that she is deemed to have been employed by SCPMG at the time of her death on

December 7, 2015.

Complaint

21.     As a result of the dispute and disagreement explained above, it has become necessary for plaintiff to retain an attorney to enforce his rights under ERISA. Plaintiff therefore is entitled to an award of reasonable attorney fees and costs under ERISA, 29 U.S.C. § 1132(g)(1).

SECOND CLAIM FOR RELIEF

(Against the Kaiser Plan for Declaratory Relief under 29 U.S.C. § 1132(a)(1)(B))

22.     Plaintiff incorporates herein by this reference as though fully set forth the allegations of Paragraphs 1 through 21, above.

23.     Inclusion of the Kaiser Plan as a defendant herein is appropriate under either F.R.Civ.P. 19(a)(1)(A) or F.R.Civ.P. 20(a)(2)(A) and F.R.Civ.P. 20(a)(3). Further, although plaintiff is informed and believes that his Qualified Dependent death benefit claim would be paid under the Kaiser Plan if in fact Sharon's employment termination date were to be rescinded and/or modified as sought in plaintiff's First Claim for Relief, plaintiff nonetheless seeks confirmation from this Court by way of declaratory relief that he indeed meets the Kaiser Plan's definition of "Qualified Dependent." Plaintiff also seeks confirmation from this Court, again by way of declaratory relief, that under the terms of the Kaiser Plan, Sharon's employment termination date, as reported to the Kaiser Plan by SCPMG, was in fact binding on the Kaiser Plan, or whether the Kaiser Plan itself (as opposed to SCPMG) was required or able to disregard or modify said termination date under the circumstances set forth above.

24.     As a result of the dispute and disagreement explained above, it has become necessary for plaintiff to retain an attorney to enforce his rights under ERISA. Plaintiff therefore is entitled to an award of reasonable attorney fees and costs under ERISA, 29 U.S.C. § 1132(g)(1).

//
//
//
//

7                                          Complaint

WHEREFORE, plaintiff ERROL BENNETT prays for judgment against defendants KAISER PERMANENTE SOUTHERN CALIFORNIA EMPLOYEES PENSION PLAN SUPPLEMENT TO THE KAISER PERMANENTE RETIREMENT PLAN FOR SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP and SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP as follows:

1.      On the First Claim for Relief, for appropriate equitable relief, in the form of declaratory relief and/or rescission, changing the date of Sharon's employment termination so that she is deemed to have been employed by SCPMG at the time of her death on December 7, 2015;

2.      On the Second Claim for Relief, for a judicial declaration of the parties' respective rights, obligations and liabilities, relative to the matters referred to in Paragraph 23, above;

3.      For benefits, if any, ancillary to the Qualified Dependent death benefit at issue;

4.      For reasonable attorney fees and costs of suit; and

5.      For such other and further relief as the Court deems just and proper.


Dated: January 11, 2024                    Respectfully submitted,

                                           LAW OFFICE OF ROBERT F. KEEHN


                                           By:  _ROBERT KEEHN_____
                                                Robert F. Keehn, Esq.
                                                Attorney for Plaintiff
                                                Errol Bennett

Complaint