United States District Court
Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ERROL BENNETT,                              Case No. 24-cv-00215-HSG

8                    Plaintiff,                  **ORDER GRANTING MOTION TO
                                                 DISMISS**
9            v.
                                                 Re: Dkt. No. 20
10   KAISER PERMANENTE SOUTHERN
     CALIFORNIA EMPLOYEES PENSION
11   PLAN SUPPLEMENT TO THE KAISER
     PERMANENTE RETIREMENT PLAN
12   FOR SOUTHERN CALIFORNIA
     PERMANENTE MEDICAL GROUP, et al.,
13
                    Defendants.
14

15          Pending before the Court is Defendants' motion to dismiss.  Dkt. No. 20.  The Court finds

16   this matter appropriate for disposition without oral argument and the matter is deemed submitted.

17   *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court **GRANTS** the motion.

18   **I.     BACKGROUND[1]**

19          The underlying facts are largely undisputed.  Sharon Walker was a longtime employee of

20   Southern California Permanente Medical Group ("SCPMG").  *See* Dkt. No. 1 ("Compl.") at ¶ 6.

21   She was placed on leave in July 2015 due to plasma cell leukemia.  *See id.*  Her leave was

22   approved through October 2016.  *See id.* at ¶ 7.  Beginning in September 2015, Sharon's brother,

23   Victor Walker, began to assist Sharon in obtaining her retirement benefits from the Kaiser Plan.

24   *Id.* at ¶ 11.  On December 3, 2015, Victor spoke with representatives of the Kaiser Permanente

25   Retirement Plan for Southern California Permanente Medical Group (the "Kaiser Plan" or "Plan")

26   who arranged for Sharon's employment with SCPMG to be terminated effective the next day,

27

28   _____

     [1] Because many of the relevant parties in this case are related, the Court refers to them by their
     first names to avoid confusion.

December 4, 2015.  *Id.* at ¶ 11.  There appears to be some dispute about whether Victor had the authority to do so under a power of attorney.  *Compare id.* at ¶ 11, *with* Dkt. No. 20 at 4.  In any event, the Kaiser Plan sent additional paperwork for Victor to complete so the retirement benefits could be paid.  *See id.* at ¶¶ 7, 12.  But Sharon died on December 7, 2015, without the paperwork having been completed or the retirement benefits having been paid.  *Id.*  And because Sharon died, Victor was "cut off" from obtaining these retirement benefits.  *Id.* at ¶ 12.

Sharon's son, Plaintiff Errol Bennett, later filed a claim for "Death Benefits" as a "Qualified Dependent" under the Kaiser Plan.  *See id.* at ¶ 13.  The Kaiser Plan[2] states in relevant part:

> 12.1    Death Benefits.
>
> (b)    If a Vested Participant dies before [her] Benefit Commencement Date and before the Administrative Committee receives [her] valid election of a Form of Payment, a death benefit may be paid as described in Section 12.2.

Dkt. No. 20-2, Ex. A ("Kaiser Plan") at 72 (§ 12.1(b)).[3]  Section 12.2, in turn, states:

> 12.2    Pre-Retirement Death Benefits.
>
> (a)    Death Before Controlled Group Termination.  If the Participant dies *while employed* by a Controlled Group Company and has a Spouse, Domestic Partner . . . or one or more Qualified Dependents . . . death benefits will be paid as provided in this subsection.

*Id.* at 72–75 (§§ 12.2(a)) (emphasis added).  A Qualified Dependent is defined as:

> [T]he Participant's biological or legally adopted child(ren) who is 18 years of age or younger on the date of the Participant's death.  If there is no individual who meets this description, then the Qualified Dependent is the individual(s) . . . who, on the date of the Participant's death, is claimed as a dependent on the Participant's tax return and either lives in the Participant's home, as the principal abode, or is enrolled in and actively attending school . . . [and] . . . is

United States District Court
Northern District of California

---

[2] The Court finds that the Kaiser Plan and its appendices, though not attached as an exhibit to the complaint, are incorporated by reference. The incorporation by reference doctrine allows a court "to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [movant's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quotation omitted).

[3] For ease of reference, the Court refers to the PDF pagination unless otherwise stated.

2

more than 18 years of age at the time of the Participant's death . . . .

*Id.* at 27 (§ 2.79).  If, however, "the Participant dies after [her] Controlled Group Termination," death benefits will only be paid to a spouse or domestic partner.  *See id.* at 75–76 (§§ 12.2(b)(iii), 12.3).

The Plan denied Plaintiff's claim in April 2020, and the administrative appeal was rejected in June 2022.  *See* Compl. at ¶ 14.  The Plan explained that because Sharon's employment had terminated three days before her death, Plaintiff was not entitled to the dependent death benefit. *Id.*; *see also* Dkt. No. 20-3, Ex. B at 1, 11–13.  In the administrative appeal letter, the Kaiser Plan referred Plaintiff to a representative of SCPMG, Frank Hurtarte, so that Plaintiff could attempt to have Sharon's termination date changed.  *See* Compl. at ¶¶ 15, 16; *see also* Dkt. No. 20-3, Ex. B at 13.  Plaintiff asked Mr. Hurtarte to change the termination date, but he declined to do so.  Compl. at ¶¶ 17–18; *see also* Dkt. No. 1-1, Ex. 1; Dkt. No. 1-2, Ex. 2.  Mr. Hurtarte's letter explained that SCPMG was unable to change their employment records because Victor was the holder of Sharon's power of attorney when he asked to terminate her employment as of December 4.  *See* Dkt. No. 1-2, Ex. 2.  According to Mr. Hurtarte, they had no reason to believe that this request was unintentional or that there was any other basis for recission of Sharon's termination date.  *Id.* Additionally, based on the December 4 termination date, SCPMG had processed her final paycheck and sent out a COBRA notice regarding continuation of health insurance.  *Id.*

Plaintiff filed this case under the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendants SCPMG and the Kaiser Plan.  *See generally* Compl.  He brings two claims under ERISA for (1) equitable relief for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3); and (2) declaratory relief regarding the denial of benefits under § 1132(a)(1)(B). Specifically, Plaintiff seeks a change in Sharon's termination date and a finding that he is a "Qualified Dependent" for purposes of Qualified Dependent death benefits under the Plan.  *See id.* at ¶¶ 10–24.  Defendants move to dismiss both claims.  *See* Dkt. No. 20.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

United States District Court
Northern District of California

1    defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

2    granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

3    complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

4    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

5    12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

6    on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

7    when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

8    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9        In reviewing the plausibility of a complaint, courts "accept factual allegations in the

10   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

11   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

12   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

13   fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

14   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

15       "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the

16   applicable statute of limitations only when 'the running of the statute is apparent on the face of the

17   complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.

18   2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  "[A]

19   complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

20   facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*,

21   68 F.3d 1204, 1206 (9th Cir. 1995)).

## III.    DISCUSSION

23       Defendants first argue that Plaintiff's claim for breach of fiduciary duty under § 1132(a)(3)

24   should be dismissed because there was no breach of fiduciary duty, and in any event, this claim is

25   duplicative.  *See* Dkt. No. 20 at 12–16.  Defendants next argue that Plaintiff's claim for denial of

26   benefits under § 1132(a)(1)(B) should be dismissed because Plaintiff is not entitled to any benefits

27   under the Kaiser Plan.  *See id.* at 11–12.

28   //

United States District Court
Northern District of California

4

### A.    Breach of Fiduciary Duty (29 U.S.C. § 1132(a)(3))

Plaintiff alleges that SCPMG, through its representative Mr. Hurtarte, breached its fiduciary duty when it rejected Plaintiff's request to change Sharon's employment termination date.  *See* Compl. at ¶¶ 15–19.

Defendants argue that Plaintiff's breach of fiduciary duty claim fails because SCPMG was Sharon's employer and determining an employee's termination date is an employer—not a fiduciary—function.  *See* Dkt. No. 20 at 12–15.  They point out that under the Plan, SCPMG was required to "furnish the Plan Administrator and Administrative Committee with such data and information they consider necessary or desirable to perform their duties under the Plan," and that SCPMG's records "concerning an Employee or Participant, including but not limited to periods of employment, [or] Termination of Employment . . . will be conclusive on all persons unless the Plan Administrator or Administrative Committee determines that the Participating Company's records are not correct."  *See* Kaiser Plan at 91 (§ 16.6).  Although this provision indicates that plan administrators may be bound by the information received from SCPMG, it does not address whether and to what extent SCPMG was acting as a fiduciary when it declined to change Sharon's termination date.

The Ninth Circuit has explained that there are two types of fiduciaries:  a "named" fiduciary that is identified in the plan and a "functional" fiduciary that engages in certain fiduciary conduct.  *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019) (citing 29 U.S.C. §§ 1102(a)(2), 1002(21)(A)).  A functional fiduciary:

> is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* at 653–54 (quoting § 1002(21)(A)).  "Because a person is a fiduciary under this provision only 'to the extent' the person engages in the listed conduct, a person may be a fiduciary with respect to

some actions but not others." *Id.* at 654 (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)); *see also Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018) (noting that "[e]mployers . . . can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.*, firing a beneficiary for reasons unrelated to the ERISA plan)") (quoting *Pegram*, 530 U.S. at 225). Accordingly, "[c]ourts must examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties." *Acosta*, 910 F.3d at 518.

Here, Plaintiff alleges in the complaint that Mr. Hurtarte was "serv[ing] as a 'functional' fiduciary under ERISA for the purpose of deciding any request by plaintiff for a change in Sharon's employment date." *See* Compl. at ¶ 16. But the complaint does not explain how Mr. Hurtarte's conduct meets the definition of a functional fiduciary. In his opposition brief, Plaintiff suggests that Mr. Hurtarte was acting in a fiduciary role when he declined to adjust Sharon's termination date because in so doing he was "exercis[ing] [] authority or control respecting management or disposition of [a plan's] assets." *See* Dkt. No. 21 at 5 (citing 29 U.S.C. § 1002(21)(A)) (emphasis omitted). But citing the language of the statute, without more, is not sufficient. Mr. Hurtarte's decision ultimately may have had an impact on Plaintiff's benefits determination, but that does not necessarily mean it was a fiduciary act.[4] *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty, then, the threshold question *is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest*, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.") (emphasis added). The Court therefore **GRANTS** the motion to dismiss this claim.

## B. Denial of Benefits (29 U.S.C. § 1132(a)(1)(B))

Defendants next argue that Plaintiff is not entitled to benefits under the terms of the Plan because Sharon died after terminating her employment with SCPMG but before completing the

---

[4] Because Plaintiff has not adequately alleged that SCPMG breached a fiduciary duty, the Court does not reach Defendants' secondary argument that the claim is duplicative.

benefit commencement process.  *See* Dkt. No. 20 at 11–12.  As detailed above, a "Qualified Dependent" is only entitled to death benefits if the Participant dies while she is still employed.  *See* Kaiser Plan at 72–74 (§ 12.2(a)(iii)).  Defendant points out that even as alleged in the complaint, Plaintiff's termination date is listed in SCPMG's records as December 4, 2015—three days before Sharon died.  *See* Compl. at ¶¶ 11–12, 18.  And SCPMG has declined to adjust this date.  *See id.* at ¶¶ 18–19.

Plaintiff acknowledges that the Qualified Dependent death benefit cannot be paid unless Sharon's December 4, 2015 termination date is changed.  *See* Compl. at ¶ 23; *see also* Dkt. No. 21 at 4.  He thus acknowledges that "there *currently* is no viable section 1132(a)(1)(B) claim for benefits under the terms of the Kaiser Plan."  *See* Dkt. No. 21 at 4 (emphasis in original).  In his opposition brief, Plaintiff also states that "[c]andidly, it does not particularly matter to [him] whether the second claim for relief (against the Kaiser Plan for benefits under 29 U.S.C. § 1132(a)(1)(B)) remains in the lawsuit."  *See id.* at 3.  Plaintiff explains that if he succeeds on his claim for breach of fiduciary duty, and Sharon's termination date is changed, then his benefits claim could be enforced under § 1132(a)(1)(B).  *Id.* at 4, & n.3.  But because there is a one-year statute of limitations, he "did not want to run the risk of prejudicing his claim in some respect by failing to timely sue the Kaiser Plan."  *See id.*  Although Plaintiff explains the pragmatic reason for bringing this claim, he does not offer any legal defense of it, and the Court accordingly **GRANTS** the motion to dismiss this claim as well.

## IV.    CONCLUSION

The Court **GRANTS** the motion to dismiss.  Dkt. No. 20.  At this stage in the litigation, the Court cannot say that amendment would be futile.  Plaintiff may therefore file an amended complaint within 21 days of the date of this order provided counsel may do so consistent with its Rule 11 obligations.

The Court further **SETS** a case management conference on April 1, 2025, at 2:00 p.m. via Public Zoom Webinar to discuss how to move this case forward efficiently.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All counsel and pro se litigants MUST be on the Zoom

Webinar at least fifteen minutes before the start of the calendar to check in with the Courtroom Deputy and to test internet, video, and audio capabilities.  The parties do not need to submit a joint case management statement at this time.

**IT IS SO ORDERED.**

Dated:    3/24/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge